In the
# UNITED STATES COURT OF APPEALS
for the Seventh Circuit

## No. 18-1388

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**ARTURO BUSTOS,**

**Defendant-Appellant.**

**On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 16 CR 668-4 — Ronald A. Guzman, *Judge*.**

## BRIEF OF THE UNITED STATES

JOHN R. LAUSCH, JR.
United States Attorney
for the Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

DEBRA RIGGS BONAMICI
Assistant United States Attorney
Chief of Appeals, Criminal Division

KALIA COLEMAN
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................ii

JURISDICTIONAL STATEMENT ....................................................................... 1

ISSUES PRESENTED FOR REVIEW ............................................................. 1

STATEMENT OF THE CASE ............................................................................ 1

SUMMARY OF ARGUMENT ........................................................................... 12

ARGUMENT ....................................................................................................... 13

    I.    The District Court Did Not Commit Procedural Error In Sentencing Defendant. ........................................................................ 13

        A.    Standard of Review...................................................................... 13

        B.    Analysis ......................................................................................... 13

    II.    Defendant's Within-Guidelines Sentence Was Substantively Reasonable. ................................................................................. 24

        A.    Standard of Review...................................................................... 24

        B.    Analysis ......................................................................................... 24

CONCLUSION...................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*United States v. Albarran*, 233 F.3d 972 (7th Cir. 2000)................................ 20

*United States v. Banks*, 828 F.3d 609 (7th Cir. 2016) ................................... 13

*United States v. Blagojevich*, 854 F.3d 918 (7th Cir. 2017)........................... 19

*United States v. Boscarino*, 437 F.3d 634 (7th Cir. 2006) ............................ 18

*United States v. Brock*, 433 F. 3d 931 (7th Cir. 2006) ................................... 23

*United States v. Carbajal*, 662 Fed. Appx. 468 (7th Cir. 2016)...................... 22

*United States v. Carter*, 538 F.3d 784 (7th Cir. 2008) .................................. 24

*United States v. Castro-Alvarado*, 755 F.3d 472 (7th Cir. 2014) ................... 14

*United States v. Cunningham*, 883 F.3d 690 (7th Cir. 2018)......................... 24

*United States v. Durham*, 645 F.3d 883 (7th Cir. 2011)................................. 18

*United States v. Egwaoje*, 335 F. 3d 579 (7th Cir. 2003) .............................. 21

*United States v. Gonzalez*, 765 F.3d 732 (7th Cir. 2014) .............................. 18

*United States v. Grigsby*, 692 F.3d 778 (7th Cir. 2012) ................................. 14

*United States v. Gumila*, 879 F.3d 831 (7th Cir. 2018) ................................. 24

*United States v. Guzman*, 236 F.3d 830 (7th Cir. 2001).................................. 21

*United States v. Hill*, 683 F.3d 867 (7th Cir. 2012) ....................................... 18

*United States v. Laufle*, 433 F.3d 981 (7th Cir. 2006) ................................... 23

*United States v. Mendoza*, 576 F.3d 711 (7th Cir. 2009) .............................. 22

*United States v. Miranda*, 505 F.3d 785 (7th Cir. 2007) ............................... 14

*United States v. Newsom*, 428 F. 3d 685 (7th Cir. 2005)............................... 23

*United States v. Oliver*, 873 F.3d 601 (7th Cir. 2017)................................... 19

*United States v. Politano*, 522 F.3d 69 (1st Cir. 2008)...................................... 25

*United States v. Reyes-Medina*, 683 F.3d 837 (7th Cir. 2012)......................... 19

*United States v. Robinson*, 435 F.3d 699 (7th Cir. 2006) ............................... 14

*United States v. Scott*, 555 F. 3d 605 (7th Cir. 2009)....................................... 24

*United States v. Smart*, 603 F. App'x 500 (7th Cir. 2015) ............................... 19

*United States v. Sunmola*, 887 F.3d 830 (7th Cir. 2018)................................. 26

*United States v. Tahzib*, 513 F.3d 692 (7th Cir. 2008) .................................... 23

*United States v. Turner*, 604 F.3d 381 (7th Cir. 2010) ................................... 18

*United States v. Villegas-Miranda*, 579 F.3d 798 (7th Cir. 2009)................... 14

*United States v. Williams*, 425 F.3d 478 (7th Cir. 2005) ................................ 14

## STATUTES

18 U.S.C. § 924(c)............................................................................................... 3

18 U.S.C. § 3553(a) ..................................................................................... 1, 14, 23

18 U.S.C. § 3553(a)(2)(A) ................................................................................. 25

18 U.S.C. § 3553(a)(6) ................................................................................. 18, 19

21 U.S.C. § 846.................................................................................................... 3

21 U.S.C. § 841(a)(1) ......................................................................................... 3

## RULES

U.S.S.G. 2D1.1(a)(5)........................................................................................... 5

U.S.S.G. 2D1.1(c)(6)........................................................................................... 5

U.S.S.G. 4A1.1(a) ........................................................................................... 5, 6

U.S.S.G. 4A1.1(b) ............................................................................................... 5

U.S.S.G. 4A1.1(d) ............................................................................................... 6

U.S.S.G. 4A1.2(a)(2) ................................................................................ 6

U.S.S.G. 4A1.2(c)(1) ................................................................................ 6

U.S.S.G. 4A1.2(e) ................................................................................... 6

## JURISDICTIONAL STATEMENT

Defendant-Appellant's jurisdictional statement is complete and correct.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court procedurally erred by failing to properly consider 18 U.S.C. § 3553(a) mitigation arguments during sentencing.

2.      Whether the sentence imposed by the district court was substantively reasonable.

## STATEMENT OF THE CASE

### *Offense Conduct*

Defendant Arturo Bustos conspired with co-defendants Enemicio Bustos, Omar Landa, and Tomas Landa, to sell 995 grams of heroin to an undercover law enforcement officer ("UCO-1") on October 12, 2016. App. 55.[1] Enemicio Bustos ("Enemicio")[2] previously had sold 25 grams of heroin to UCO-1 on September 9, 2016. App. 40. In telephone conversations on October 9 and 10, 2016, Enemicio and UCO-1 discussed a potential transaction involving two to five kilograms of heroin. App. 41-42. Following these initial conversations, on

---

[1] Citations to documents in the electronic record on appeal are to "R.," followed by the document number. Citations to the Presentence Investigation Report are to "PSR," followed by the paragraph number. Citations to defendant's opening brief, Short Appendix, and separate Appendix are to "Br.," "SA.,"and "App.," respectively, followed by the page number.

[2] For ease of reference, we sometimes refer to Enemicio Bustos as "Enemicio." Omar Landa as "Omar," and Tomas Landa as "Tomas."

October 10 and 11, 2016, defendant and Enemicio engaged in multiple telephone additional conversations with UCO-1, in which they arranged the time, date, and location for a transaction in which defendant and Enemicio would sell UCO-1 three kilograms of heroin, in exchange for $180,000. App. 57.

Specifically, during a telephone call on October 11, 2016, defendant instructed UCO-1 to pack the purchase money in three bags containing $50,000 each, and one bag containing $30,000. *Id.* During another call on October 12, 2016, defendant instructed UCO-1 to meet him at 55th Street and Homan Avenue in Chicago. App. 43.

After this call, Enemicio drove defendant to the meet location and parked the car. App. 44. Defendant then exited Enemicio's car and entered UCO-1's car, where he found both UCO-1 and another undercover law enforcement officer ("UCO-2"). *Id.* In the meantime, Enemicio drove his car to the 5600 block of St. Louis in Chicago, and parked . *Id.*

Defendant instructed UCO-1 to drive to 55th Street and St. Louis Avenue, where UCO-1 would receive the heroin. *Id.* After arriving at 55th and St. Louis, co-defendant Omar Landa ("Omar") entered UCO-1's car. *Id.* While inside UCO-1's car, UCO-1 showed defendant and Omar the $180,000 in cash he had brought with him to purchase the heroin, pursuant to their agreement. App. 45. After verifying the cash was there, Omar told UCO-1 that another individual was bringing the heroin. App. 57.

Shortly thereafter, co-defendant Tomas Landa ("Tomas") arrived in an Infiniti sedan. App. 45. Omar and UCO-1 exited UCO-1's car, walked to the Infiniti sedan, and entered it. *Id*. Inside the vehicle, Tomas gave UCO-1 a plastic bag containing ten bars of heroin weighing a total of approximately 995 grams. App. 57.

### Indictment and Plea

On October 13, 2016, defendant was charged by complaint, together with Enemicio, Omar, and Tomas, with conspiracy to possess and distribute 100 grams of more of heroin, in violation of 21 U.S.C. § 846. App. 33. On November 10, 2016, Enemicio was charged by indictment with distribution of a mixture containing a detectible amount of heroin on September 9, 2016, in violation of Title 21 U.S.C. § 841(a)(1) (Count 1). App. 49. Defendant, together with Enemicio, Omar, and Tomas were charged with conspiracy to possess and to distribute a mixture containing 100 grams or more heroin on October 12, 2016, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count Two); and distribution of 100 or more grams of heroin on October 12, 2016, in violation of 21 U.S.C. §§ 841(a)(1) and 2 (Count Three). App. 50-51. Tomas Landa also was charged with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 4). App. 52.

On July 13, 2017, defendant pleaded guilty to Count Two of the indictment, pursuant to a written plea agreement. App. 56. In the agreement,

defendant admitted that he had agreed with his co-defendants to distribute 995 grams of heroin to UCO-1. App. 57. Defendant further admitted that he and Enemicio Bustos engaged in several phone conversations with UCO-1 on October 11 and October 12, 2016, to set up the narcotics transaction, and that, on October 12, 2016, he and Omar Landa met with UCO-1 and verified that UCO-1 had the cash necessary to purchase the heroin. App. 57.

*Sentencing*

Prior to his sentencing hearing, defendant filed a sentencing memorandum. App. 72-90. In the memorandum, defendant objected to the Probation Officer's factual statement that defendant, together with Enemicio Bustos, negotiated and orchestrated the heroin transaction, and claimed that, instead, Enemicio had arranged and negotiated the transaction before defendant became involved. App. 79. Defendant argued that a below-Guidelines sentence of 60 months' imprisonment was warranted in light of:

> (1) the need to avoid unwarranted disparity between his sentence and the sentences imposed on his co-defendants based on the purported facts that the co-defendants played a larger role in the offense, and defendant's criminal history category overrepresented the seriousness of his past criminal conduct;

> (2) defendant's advanced age, poor health, and resulting low likelihood of recidivism;

> (3) defendant's having experienced unduly harsh conditions in pretrial detention due to his health problems;

4

(4) the prospect that defendant will suffer unduly harsh conditions in prison because of the lack of access to Bureau of Prison programs and resources available to him as a deportable alien, and his health problems; and

(5) the possibility that he would be re-incarcerated by the State as a result of his violation of parole by committing the instant offense.

App. 75-76.

The district court conducted a sentencing hearing on February 7, 2018. R. 133; SA. 9-32. The court began the hearing by considering the advisory sentencing range under the Sentencing Guidelines. Consistent with the PSR, the district court calculated defendant's base offense level to be 28, pursuant to Guideline §§ 2D1.1(a)(5) and (c)(6), because the offense of conviction involved 995 grams of heroin. SA. 12. With a three-level reduction for acceptance, defendant's adjusted offense was calculated as 25. *Id.* The district court calculated defendant's criminal history category as V, based on the following:

(1) On or about September 24, 2009, defendant was convicted in the Circuit Court of Cook County of manufacture and delivery of cocaine (conduct for which defendant was originally arrested and charged in 1990, but for which he was not sentenced until 2009 due to his being "unavailable" for sentencing), and was sentenced to 12 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant received three criminal history points for this conviction.

(2) On or about September 24, 2009, defendant was convicted in the Circuit Court of Cook County of possession of a controlled substance, and was sentenced to one year of imprisonment, to be served consecutively to the sentence imposed on the 1990 charge. Pursuant to Guideline § § 4A1.1(b) and

5

4A1.2(a)(2), defendant received two criminal history points for this conviction.

(3)    On or about June 24, 2009, defendant was convicted in the Circuit Court of Cook County of possession of an altered identification card, and was sentenced to 18 months' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant received three criminal history points for this sentence.

(4)    On or about March 27, 1985, defendant was convicted in the Circuit Court of Cook County of resisting a peace officer, and was sentenced to one year probation. Pursuant to Guideline § 4A1.2(c)(1) and (e), defendant received zero criminal history points for this conviction.

(5)    On or about August 30, 1979, defendant was convicted in the Northern District of Illinois of distribution of a controlled substance, and sentenced to 5 years' probation. Pursuant to Guideline § 4A1.2(e), defendant received zero criminal history points for this conviction.

(6)    Defendant committed the instant offense while under a criminal justice sentence, namely, parole for the convictions set forth in 8(c)(i), (ii), and (iii). On this ground, ppursuant to Guideline § 4A1.1(d), defendant received two additional criminal history points.

SA. 12; PSR at ¶¶ 19-43.

The product of defendant's adjusted offense level of 25 and criminal history category of V was an advisory sentencing range of 100-125 months' imprisonment. SA. 12. A statutory mandatory minimum sentence of 60 months also applied. SA. 16. The parties agreed with the district court's Guidelines calculations. SA. 11-12.

The court then heard argument from the parties. The government argued that a sentence of 100 months' imprisonment was warranted based on:

> (1)   the seriousness of the offense—a conspiracy to distribute 995 grams of heroin, a highly addictive opioid;
>
> (2)   the fact that, contrary to defendant's characterization, defendant played a significant role in the offense, which included assisting Enemicio in negotiating the price and quantity of the heroin to be sold to UCO-1, arranging the location where the transaction was to occur, and verifying that UCO-1 brought the purchase money to the planned transaction; and
>
> (3)   defendant's long history of drug dealing, and his commission of the offense while on parole for a state drug distribution conviction.

SA. 13-16. With respect to defendant's disparity argument, the government noted that a sentence 35 months higher than that received by Enemicio was warranted in light of defendant's far more extensive criminal history. SA. 15-16.

Defense counsel then argued, emphasizing first his claim that defendant joined the conspiracy after the deal was set and played a lesser role in a single-transaction conspiracy, and, thus, a sentence longer than the one imposed on Enemicio was unwarranted. Counsel repeatedly argued that the government's decision to seek a mandatory minimum sentence in his case, and to argue for a sentence higher than Enemicio's (or Tomas Landa's) could not be squared with their relative roles in the offense.   SA. 17-18, 23-24.

Defense counsel then argued that, due to defendant's age, health, family ties, and the likelihood that he would be deported after serving his sentence, and the fact that he had received no discipline while in pretrial detention, all

militated toward a finding that defendant posed a low risk of recidivism, and that a sentence longer than 60 months was unnecessary for the protection of the public.  SA. 15-21.

Defense counsel then argued that defendant's criminal history category, overstated the seriousness of his past criminal conduct because his 1990 state narcotics trafficking case (for which he received a sentence of 12 years' imprisonment) did not proceed on a "normal timeline," and due to that fortuity, he received five criminal history points he would not otherwise have received. SA. 21-22.[3]  Counsel conceded that the only reason the 1990 case did not proceed normally was that he was "unavailable to be sentenced." SA. 22.

Finally, defense counsel argued that a lower sentence was warranted because defendant's health problems and his status as a deportable alien ineligible for certain resources and programs at the BOP, made the conditions of imprisonment more sever for him. SA. 18, 20-21, 24-25. Defense counsel then reiterated his request for a below-Guidelines sentence of 60 months' imprisonment. SA. 25.

Following the arguments of counsel, the court offered defendant an opportunity to speak, which defendant declined. SA. 26.

---

[3] Had the case proceeded normally, it would have been too old to qualify for criminal history points in this case, much less for additional points based on defendant's status as a parolee at the time of the offense in this case.

The court then went over the factors it considered important in determining the sentence, beginning with the seriousness of the offense:

> . . . [I]n terms of the seriousness of the offense, this is a significant amount of heroin. I need not repeat what I have said so often in the past about the disastrous effects that illegal drugs have had and continue to have on the neighborhoods in the city of Chicago and the surrounding areas. It is appalling.
>
> Not only the disastrous results for the users of the illegal drugs who are being—whose weaknesses are being taken advantage of, but the degree of violence that comes with illegal drug dealing, the need to protect territory and drugs and cash from other lawless people leads to gun violence on an almost daily basis in our city. It's just horrific, it's just horrific.

SA. 26-27.

The court then focused on the need for the sentence to promote respect for the law, provide specific and general deterrence, and protect the public:

> There is, I think, in this case unfortunately an enhanced need to promote respect for the law. This defendant has been involved in drug dealing for over 30 years. He has previously been convicted. He has received both low and high sentences in those previous convictions.
>
> His first conviction, a federal conviction, he was given a very light sentence of five years of probation, giving him an unprecedented opportunity to rehabilitate himself and to conform himself to the rules of society without having to pay any penalty in terms of incarceration. It was a gift, and he threw it away.
>
> He has previously been convicted and sentenced to 12 years of incarceration, and I fail to see how, on a subsequent conviction, committed while he was still on parole for that, I could give him a below-guideline sentencing range that would amount to stepping

down the amount of punishment with a subsequent offense rather than stepping it up, which is deemed to be a deterrent. With respect to his role in the offense, the defendant may have come into the offense at a later stage than others, but his role was significant. He was involved completely. And, frankly, you need to take into account his background and history in drug dealing to fully appreciate his role in this particular offense.

He has been dealing drugs for many, many, many years, and if he was recruited by others, that probably is why, because he has that expertise.

SA. 27-28.

The court the addressed other aspects of the defendant's history and characteristics, particularly those emphasized by defendant in mitigation:

The Court is not ignorant and does take into account the fact that the defendant has long-standing addiction problems, which have, no doubt, fueled his criminal history. It is tragic that he is 62 years of age, and at this time in this life finds himself in this situation with really nothing.

But there is nothing I can do about the defendant's own deliberate choices of lifestyle. He made these decisions that brought him here today, to continue to commit offenses, to continue to sell illegal drugs, to continue to violate the law even into his late years. I see no likelihood that this defendant's age will in any way be a deterrent to further criminal conduct.

I frankly don't think he knows how to do anything else and has never, ever attempted to do otherwise, even though he has been given opportunities to do so.

And I take into account the defendant's poor childhood, the lack of parental guidance, his difficult situation with his father being deported. But there are tens, in fact, hundreds of thousands of immigrants in this country today who suffered the same circumstances and did not turn to an entire lifetime of criminal conduct.

10

SA. 29.

Finally, the court rejected defendant's claim that he faced additional punishment in the state court for violating his parole by committing the instant offense:

> Counsel raises the issue of potential harsh treatment in state court due to his parole status when he committed this offense. The likelihood that he will be violated on his parole revocation and resentenced to imprisonment is almost nil.
>
> The state authorities are going to do nothing with that. That is why they're so silent. They're going to do nothing.
>
> It would not make any sense for the overcrowded jails and the crowded dockets in the criminal justice system on the state level for the State to undertake to punish this defendant further after he has been sentenced here in federal court for a significant amount of time, not to mention the fact that he will be deported after he is released from prison.

SA. 28.

Taking all of these factors into account, the court found that a 100-month sentence was sufficient but not greater than necessary to serve the statutory purposes of sentencing. SA. 28.

This appeal followed.

## SUMMARY OF ARGUMENT

The sentence imposed by the district court was procedurally sound and substantively reasonable. The district court carefully considered the evidence and arguments presented by the parties, and its stated rationale for the sentence made clear that it flatly rejected defendant's effort to minimize his role in the offense and the seriousness of his prior criminal conduct, and concluded that the other factors raised by defendant in mitigation far outweighed other factors, including the need for the sentence to reflect the seriousness of the offense, and to provide deterrence and protect the public. The court provided ample basis for review by fully explaining the reasons for the chosen sentence, as well as the reasons for rejecting defendant's mitigation arguments as a basis for imposing the sentence requested by the defendant— 60 months, or half of the low end of the advisory range.

This Court presumes that a properly calculated, within-Guidelines sentence is substantively reasonable and defendant has not come close to meeting his burden of rebutting that presumption here. Defendant was convicted of conspiring to sell nearly a kilogram of heroin to undercover officers while on parole for state drug trafficking offenses, and after spending approximately 39 years engaged in the business of narcotics trafficking. The court acted well within its considerable discretion in rejecting or giving less weight to the factors defendant stressed in mitigation. The court's

determination, in light of the evidence and the pertinent § 3553(a) factors, that a sentence within—rather than below—the advisory sentencing range was appropriate, was in no way substantively unreasonable.

## ARGUMENT

**I.    The District Court Did Not Commit Procedural Error In Sentencing Defendant.**

### A.    Standard of Review

This Court reviews *de novo* claims of procedural error at sentencing. *United States v. Banks*, 828 F.3d 609, 618 (7th Cir. 2016).

### B.    Analysis

Defendant does not challenge the district court's calculation of the advisory sentencing range under the Sentencing Guidelines; rather, he contends that the court failed to adequately consider his arguments in mitigation and provide a sufficient explanation for imposing a sentence greater than that imposed on his codefendants. This argument is contradicted by the record; as the record reflects, the district court comprehensively considered defendant's offense conduct, criminal history, and personal background, as featured by the defense at sentencing in determining the sentence and amply described its reasoning in imposing sentence.

A sentencing court commits procedural error when it fails to calculate, or improperly calculates, the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on

clearly erroneous facts, or fails to adequately explain the basis for the chosen sentence. *United States v. Castro-Alvarado*, 755 F.3d 472, 475 (7th Cir. 2014). To justify a sentence, a district court need only "explain why the sentence imposed is appropriate in light of the statutory factors specified in § 3553(a)." *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). The court need not "comprehensively discuss each of the [§ 3553(a)] factors," *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009), nor "comment on every argument the defendant raises." *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). "Procedural compliance with § 3553(a) thus requires that the judge give meaningful consideration to the relevant factors in light of the individual circumstances of the case, but not that he step through each § 3553(a) factor in checklist fashion." *United States v. Grigsby*, 692 F.3d 778, 791 (7th Cir. 2012) (citations and quotations omitted). In other words, "it is enough that the record confirms that the court has given meaningful consideration to the § 3553(a) factors." *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005).

As reflected by the transcript of the sentencing hearing, the district court conducted a thorough analysis of the pertinent factors set forth in 18 U.S.C. § 3553(a) factors, and addressed the defendant's primary arguments in mitigation. From the outset, the court made clear that it considered the seriousness of the offense an important factor in this case:

> [I]n terms of the seriousness of the offense, this is a significant amount of heroin. I need not repeat what I have said so often in the past about the disastrous effects that illegal drugs have had and continue to have on the neighborhoods in the city of Chicago and the surrounding areas . . . . Not only the disastrous results for the users of the illegal drugs who are being—whose weaknesses are being taken advantage of, but the degree of violence that comes with illegal drug dealing, the need to protect territory and drugs and cash from other lawless people leads to gun violence on an almost daily basis in our city. It's just horrific, It's just horrific.

SA. 26-27.

And the court expressly rejected defendant's fervent efforts to minimize his conduct:

> With respect to his role in the offense, the defendant may have come into the offense at a later stage than others, but his role was significant. He was involved completely. And, frankly, you need to take into account his background and history in drug dealing to fully appreciate his role in this particular offense.

SA. 27. Acting well within its discretion, the court rejected the notion that defendant's role in the drug conspiracy paled in comparison to those of his co-defendants, and the court's conclusion was fully supported by the record. The record reflects that, while Enemicio may have initiated contact with UCO-1 to set up the narcotics transaction, defendant played a significant role in making the transaction happen. As defendant admitted in his plea agreement, through a series of consensually recorded telephone calls between defendant, Enemicio Bustos, and UCO-1, defendant participated in arranging the meeting location, and the quantity and price of the drugs to be transferred to UCO-1. App. 57.

When the time came to execute the agreement, defendant and Omar Landa were the ones who met with UCO-1, and ensured that he had the money, and that the deal could take place. *Id.* As the district court put it, defendant was "involved completely" in the offense, and did not deserve a reduction based on his have played a lesser role.

Likewise, rather than ignoring it, the district court flatly rejected defendant's argument that his past criminal conduct was overrepresented by his Guidelines criminal history category given that it included a five-point increase due to a 1990 state drug conviction. According to defendant, the court should have rejected the government's position that defendant's extensive criminal history distinguished him from his co-defendants for sentencing purposes because, had defendant's 1990 case been resolved earlier, pursuant to Guideline. § 4A1.2(e), it would not have counted towards his criminal history calculation. Defendant acknowledges that the reason his case was not resolved earlier is that, before he could be sentenced, defendant absconded and remained a fugitive for nearly 20 years—until 2009 when he was caught once again trafficking narcotics. *See* PSR at ¶¶ 35, 39. In light of this fact, as well as the fact that, regardless of what led to it, defendant committed the instant offense while on parole from a state sentence for two drug trafficking offenses, it is not surprising that the district court failed to see anything about defendant's criminal history deserving of leniency. See SA. 27.

Indeed, the court expressly found that defendant's criminal history enhanced, rather than detracted from, the need to promote respect for the law and provide deterrence. And once again, the court's conclusion was fully supported by the record. Defendant has been involved in drug dealing for over 30 years—as reflected by the chronology of defendant's narcotics trafficking convictions, which began in 1978 and ended with this case. As the court pointed out, thus far, no sentence—large or small—had deterred defendant. The court described the sentence of probation defendant received for his first federal conviction as a "gift" and "an unprecedented opportunity to rehabilitate himself and to conform himself to the rules of society without having to pay any penalty in terms of incarceration," that defendant "threw away." SA. 27. Likewise, the court observed, a 12-year sentence also had no impact. The court went on to note that heavy sentences had also failed to deter defendant and that fact, if anything, militated in favor of a greater, not lesser sentence:

> He has previously been convicted and sentenced to 12 years of incarceration, and I fail to see how, on a subsequent conviction, committed while he was still on parole for that, I could give him a below-guideline sentencing range that would amount to stepping down the amount of punishment with a subsequent offense rather than stepping it up, which is deemed to be a deterrent.

SA. 27. This conclusion was fully supported by the evidence and well within the district court's discretion.

17

Defendant argues that the district court failed to consider unwarranted disparities between his sentence and the sentences imposed on his co-defendants. Under § 3553(a)(6), sentencing courts are to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." Although "unwarranted sentencing disparities between codefendants" are prohibited, "warranted disparities are allowed." *United States v. Turner*, 604 F.3d 381, 389 (7th Cir. 2010). Warranted disparities include disparities among defendants with different criminal histories. *See, e.g.*, *United States v. Hill*, 683 F.3d 867, 871 (7th Cir. 2012); *United States v. Durham*, 645 F.3d 883, 897 (7th Cir. 2011). They also include disparities between a defendant who did not cooperate with the government and a defendant who did. *See, e.g.*, *United States v. Gonzalez*, 765 F.3d 732, 739-40 (7th Cir. 2014); *United States v. Boscarino,* 437 F.3d 634, 638

(7th Cir. 2006).[4] Here, defendant had a far more extensive criminal history than his co-defendants. Therefore, disparities in their sentences were warranted and the court was not required to explicitly discuss this factor.

Contrary to defendant's contention, the district court also discussed other mitigating factors raised by defendant, and simply found that they did not warrant a lower sentence. *See* SA. 29. The district court took the view that, regardless of the hardships defendant had experienced, his decisions to commit crimes were "deliberate choices of lifestyle" that indicated that—despite defendant's age—he posed a serious risk of recidivism requiring a stiff sentence. SA. 28. With respect to age, specifically, the court stated,

> He made these decisions that brought him here today, to continue to commit offenses, to continue to sell illegal drugs, to continue to violate the law even into his late years. I see no likelihood that this

---

[4] This argument also lacks merit if construed as an argument that the district court procedurally erred in failing to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, pursuant to § 3553(a)(6). "[T]he Sentencing Guidelines are themselves an anti-disparity formula because the Sentencing Commission considers the need to avoid unwarranted sentencing disparities when setting the Guidelines ranges." *United States v. Oliver*, 873 F.3d 601, 608 (7th Cir. 2017) (quoting *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017)). As a result, where the district court "correctly calculated and carefully reviewed the Guidelines range," as it did here, the district court "did not need to say a word about § 3553(a)(6)'s application." *Id.* (quoting *United States v. Reyes-Medina*, 683 F.3d 837, 841 (7th Cir. 2012)). Further, the focus of § 3553(a)(6) is limited to "*unwarranted or unjustified*" sentencing disparities, not different sentences "justified by the circumstances." *United States v. Smart*, 603 F. App'x 500, 501-02 (7th Cir. 2015) (emphasis in original).

defendant's age will in any way be a deterrent to further criminal conduct.

SA. 28.

With respect to defendant's infirm health, the record reflects that the court reviewed the PSR and sentencing memos prior to the sentencing hearing, and listened to the parties' arguments during the sentencing hearing. Defendant reported to the court that he suffers from diabetes, high cholesterol, chronic sinus issues, a gastro-esophageal reflux problem, and helicobacter pylori. SA. 84. Defendant provided no evidence to show that the Bureau of Prisons is ill-equipped to provide proper healthcare for him. Defendant acknowledges that, while being housed at the Metropolitan Correction Center, he received ongoing treatment for his health conditions. Br. 23. Because defendant cannot show that the Bureau of Prisons is unable to provide him with proper healthcare, a below Guidelines sentence was unwarranted. See *United States v. Albarran*, 233 F.3d 972 (7th Cir. 2000) (finding that the district court did not err when it refused to depart downward from the guidelines on the ground that the defendant suffered from an extraordinary physical impairment, namely, cardiomyopathy and an enlarged heart, where the defendant failed to present any evidence regarding why his physical condition would preclude him from being incarcerated and cared for properly by the prison.) The court was not required to specifically comment on its

perspective regarding the Bureau of Prison's ability to care for the defendant, where, as here, defendant provided no evidence to suggest he had received improper healthcare while in custody or that such would happen in the future.

Defendant's claim that the court failed to consider the negative impact his illegal alien status would have on his access to prison resources and the effect of deportation on his family is also unsupported by the record. The court was not required to specifically comment on this stock issue. *See United States v. Guzman,* 236 F.3d 830, 834 (7th Cir. 2001) ("defendant's status as a deportable alien is relevant only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are *substantially more onerous* than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense"); *see also United States v. Egwaoje*, 335 F. 3d 579, 589 (7th Cir. 2003) (affirming the district court's ruling denying the defendant's motion for downward departure on grounds his deportable alien status would result in an unusual or exceptional hardship in his conditions of confinement, on grounds that the district court's comment that it "considered" the motion was "brief" but "clear"). Nonetheless, remarks made by the district court shows that in fashioning the sentence, the court considered how defendant's alien status may impact his ability to avail himself of prison programs. For example, the court stated, "While in the custody of the Bureau of Prisons, the defendant should be *given an opportunity* to participate

in the Residential Drug Treatment program to try to wean himself from this lifelong addiction that he has had." SA. 29. The district court's request that defendant be "given an opportunity" to participate in the prison's drug treatment program demonstrates an implied consideration that defendant's alien status would potentially limit his access to certain programs.

Further, defendant's argument that his deportation would also have a serious impact on his family is precisely the type of stock argument that the sentencing court need not comment on. *See United States v. Mendoza,* 576 F.3d 711, 722 (7th Cir. 2009) ("Mendoza's deportation argument strikes us as nothing other than a stock argument... it does not seem that Mendoza would be alone in claiming that deportation would separate him from his family. As such, Mendoza's deportation argument was not a substantial one requiring explicit discussion..."); *see also United States v. Carbajal,* 662 Fed. Appx. 468, 742 (7th Cir. 2016) (where defendant was deportable, district court properly recognized need for deterrence and to protect public). This conclusion holds particularly true in this case: A portion of defendant's participation in this case involved him assisting Enemicio Bustos with arranging the meeting location, date, time, and price for heroin transaction. Such involvement does not require him to be physically present within the borders of the United States.

In sum, the district court adequately addressed defendant's principal arguments in mitigation and its explanation of its choice of sentence was

22

sufficient to demonstrate that the court considered defendant's arguments, but concluded that his history and characteristics and the needs for the sentence to protect the public from further crimes, promote respect for the law, and afford adequate deterrence warranted the sentence imposed.

The record reflects that the court more than adequately took into account defendant's arguments and the pertinent § 3553(a) factors. The district court was not required to specifically discuss how each mitigation factor presented by the defendant factored into the sentencing decision. A court's discussion need only demonstrate its meaningful consideration of the primary arguments raised by defendant and the factors set forth in 18 U.S.C. § 3553(a). *United States v. Tahzib*, 513 F.3d 692, 694-695 (7th Cir. 2008) (citing *United States v. Laufle*, 433 F.3d 981, 997 (7th Cir. 2006)). The court need not detail precisely how and why the court deemed each factor to call for the court to decline defendant's request for a below-Guideline sentence of 60 months' imprisonment. *See United States v. Brock*, 433 F. 3d 931 at 936 (7th Cir. 2006); *United States v. Newsom,* 428 F. 3d 685 at 687-88 (7th Cir. 2005).

## II. Defendant's Within-Guidelines Sentence Was Substantively Reasonable.

### A. Standard of Review

This Court reviews the substantive reasonableness of a sentence for abuse of discretion, considering the "sentencing court's explanation of its reasons for imposing a particular sentence." *United States v. Carter*, 538 F.3d 784, 789-90 (7th Cir. 2008). The explanation "need not be exhaustive but it must be adequate to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Scott*, 555 F. 3d 605, 608 (7th Cir. 2009). "A sentence within a properly calculated Guidelines range is presumptively reasonable." *United States v. Gumila*, 879 F.3d 831, 837 (7th Cir. 2018). Defendant bears the burden of overcoming the presumption of reasonableness. *E.g., United States v. Cunningham*, 883 F.3d 690, 701 (7th Cir. 2018).

### B. Analysis

The defendant has not come close to overcoming the presumption of reasonableness that attaches to his within-Guidelines sentence. The district court did not abuse its discretion in declining to impose a below-Guidelines sentence in light of all the pertinent § 3553(a) factors, including in particular, the seriousness of the offense and defendant's extensive history of recidivism and commission of the instant crime while on parole for a state drug

distribution offense, and did not abuse its discretion in deciding that a prison sentence of 100 months was sufficient but not greater than necessary to reflect the seriousness of defendant's offenses, promote respect for the law, protect the public from future harm, and deter him from committing additional crimes.

As discussed above, in arriving at the 100-month sentence, the court explained its decision in relation to the § 3553(a) factors, noting that such a sentence was necessary to account for the nature and seriousness of the offense, and the need to deter future criminal activity and protect the public. The court thoughtfully addressed the arguments made in mitigation, as well as aggravation, and went on to explain the factors it considered most significant in determining the sentence.

At the sentencing, the court properly gave substantial weight to the need for the sentence imposed to reflect the seriousness of the offense as outlined in § 3553(a)(2)(A). The court's emphasis on the effects of illegal narcotics trafficking was a proper consideration in evaluating the seriousness of defendant's offense. *Cf. United States v. Politano*, 522 F.3d 69, 72 (1st Cir. 2008) (affirming an above-Guidelines sentence for a gun trafficking offense where the district court made a specific finding that there was an "epidemic of handgun violence in communities within" that jurisdiction).

The court expressly tied its discussion of the evidence to § 3553 factors, including the need to promote respect for the law and to provide deterrence.

25

This was proper. *See generally United States v. Sunmola*, 887 F.3d 830, 841-42 (7th Cir. 2018).

Defendant's substantive disagreement with the way the district court weighed the evidence does not support a finding of substantive unreasonableness. The district court properly exercised its discretion in concluding that a low-end Guidelines sentence of 100 months' imprisonment was appropriate, taking into account all the evidence and the pertinent § 3553(a) factors. Accordingly, the sentence should be affirmed.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that defendant's conviction and sentence be affirmed.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

DEBRA RIGGS BONAMICI
Assistant United States Attorney
Chief of Appeals, Criminal Division

/s/ Kalia Coleman
KALIA COLEMAN
Assistant United States Attorney

**RULE 32 CERTIFICATION**

I hereby certify that:

1.  This brief complies with the type volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 6,111 words.

2.  This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the Microsoft Office Word proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

By:  /s/ Kalia Coleman
KALIA COLEMAN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois
(312) 353-3540

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, I electronically filed the foregoing Brief and Appendix of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted.

By:     /s/ Kalia Coleman

KALIA COLEMAN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois
(312) 353-3540